May it please the Court, Bill Ivins appearing on behalf of Petitioner Appellant Tony Ray Evans. I want to start by taking a look at the information that Defense Counsel had available to him after the prosecutor turned over the two pieces of evidence, the two interviews, with the confidential informant, Renee Kimberling. That ER 177 is a copy of the report that was turned over with the discovery. And in that report it indicates that the interview took place on January 6, 1997, and that the people present were Detective Fulcher, the detective from the San Bernardino Police Department, Higgins, an investigator, and the confidential informant. Counsel, I'm having trouble with the argument. Let me explain why. As far as I can tell, the record establishes the prosecutor didn't know that these witnesses would refuse to testify, so he wasn't falsely representing in his opening statement that they would and what they would say. The witnesses, at least one or two of them, I can't remember how many, were ordered to testify by the judge. They were not allowed to invoke their Fifth Amendment right, and they just defied the judge. So I can't see where the prosecutor's opening statement is violative of any holding by the Supreme Court, and I can't see where there's a confrontation clause problem because there was nothing to confront. They didn't testify. I'm having trouble putting together the logic of what the argument is without those two things. And I did, too, until I very carefully read Frazier v. Cupp. And I was actually starting with my second issue, but I'm going right back to my first issue. Frazier v. Cupp is not as limited as many of the lower court opinions that come after it indicate. In Frazier and in Douglas, in Douglas it does say that sometimes an opening statement can be in the nature of testimony. So we have a clearly established Supreme Court case from when I was a very little girl saying that opening statements can be perceived by the jury as testimony. And certainly in this case, and I've gone through that in detail in my AOB, there's a lot that is said by the prosecutor in opening details about, for instance, the fact that Alan Davis was in the car in present, a fact that never comes out anywhere during the trial. What language in Frazier are you pointing to? Where are you in Frazier? Where am I in Frazier? Yeah. In Frazier it says that... What page? I'm on page 1423. But I was also on Douglas first, which I do not have the page cite for. Okay, but you told us that Frazier was the case that was really important. Frazier is the case that's really important. Douglas came first. So you're on page 1423. That would be of the Supreme Court reporter as opposed to U.S. reports. That's correct, Your Honor. Okay, which paragraph are you looking at? I am looking at right under where it says that the U.S. Supreme Court page would be 736. So it's the... Okay. Okay. So the line says it may be that some remarks included in an opening or closing statement could be so prejudicial that a finding of error or even constitutional error would be unavoidable. Yes. Okay, but now, but the court then says, but here we have no more than an objective summary of evidence which the prosecutor reasonably expected to produce. That would seem to be pretty clear Supreme Court precedent running quite contrary to your client's interests. Exactly. This is a very tough row to hoe here, Your Honor. I am certainly admitting. You've got implied dicta rather than holding. Okay. Well, but... 2254 says holding. What Frazier also says, though, is it looks at the three things. It looks at the instructions that were given to the jury. It looks at how vitally important the evidence was. And in our case, that's what we have. We have the case that Frazier is anticipating. We have the case where the evidence was vitally important. This was a case all about identification. And that identification issue is... You're saying a prosecutor, if a prosecutor in his opening statement says, I'm going to put on witnesses A, B, and C, and they're going to testify that they saw the defendant commit the crime, and then A, B, and C all go south on him, that it's unconstitutional, and if he manages to convict anyway, even without A, B, and C, the conviction has to be set aside. I'm saying that it's a balancing test according to Frazier v. Cuff, and we want to look at how critical that evidence was. Now, if we have A, B, and C, and A, B, and C are, as in our case, it, other than the confidential informant, then I think we are looking at vitally critical evidence. The instructions were fairly minimal in this case. Now, the judge does say that he had instructed earlier, I don't think it's actually in our record, that he had earlier said something about how the opening statement isn't evidence, and then he does give that one instruction where he says, statements of counsel during trial are not evidence. That's the one that we actually have in the record. These were not strong statements where the court said, now you're going to have to ignore everything that the prosecutor said in the opening statement because that evidence never came in. I mean, everyone was caught flat-footed here. I mean, everyone thought they were going to testify, apparently, although we've alleged in the petition that Wait a minute. The judge did instruct that statements of counsel are not evidence, right? The statements of counsel during trial. Wasn't the opening statement during trial? Yes. I'm just saying the actual language in the concluding instructions by the court. I'm just saying, I think the jury But it is during trial. Jeopardy is attached. The jury's been sworn. We're talking about what the jury would have perceived and how strongly they were cautioned, which was not really very much in this case, and we're looking at the totality of all those circumstances. And the argument essentially is that there's due process violation, not prosecutor's conduct per se, because there was a finding of good faith and there's nothing that we've, I mean, we haven't had an evidentiary hearing. But that confrontation clause, we can look at the opening statement as testimony, according to Douglas, and Frazier has this balancing test. And this just hasn't caught much. And I think I've put most of the cases in the briefing where they sort of talk about it sort of like, you know, one of those pictures where you're looking at the shadow. This is the other side. If the court has no further questions about that, I want to briefly turn to the ineffective assistance of counsel claim and talk about Renee Kimberling. That ER 177 is the piece of paper that was turned over to the defense counsel early on, and it shows that Fulcher and an investigator in the confidential informant were there. The one that is turned over during the trial shows the presence of Detectives Lane and another Riverside police officer. And, I mean, I just must say, as someone who's been practicing a long time, it is appalling to me that Mr. Cantrell did not do an investigation into Renee Kimberling when she is now the person placing his client at the scene of the murder. Counselor, did he ask her about drug use? He asked her about drug use and that she was on methamphetamine. Yes, she answered that question. What other questions should he have asked? He should have, well, we don't know all the questions he should have asked. The first question I would have asked, if it had been me and this is all the evidence I had, I would have said, who did you call? Who did you meet with? Why did you call them? And if her answer was, I called Detective Lane because it was in my contract, we've got Detective Lane's proffer, that that's not true. What did you hope to gain from your cooperation now that we know it isn't part of your contract? Frankly, we don't have the answer to that, and I would request that the Court remand so that we can have the evidentiary hearing and get the copy of that contract that Mr. Evans asked for in his traverse. He made that request. You know, he didn't make an official separate motion for discovery or we would have raised that as a separate issue, but he did say we need to see the contract. And no one's ever seen that contract. Defense counsel didn't follow up at trial. None of the courts in California had any kind of hearing. They didn't. As I recall, the reason that there was a surprise about Renee Kimberling is that the other three witnesses all clammed up, leaving the prosecutor without witnesses. Correct. The petition alleges, however, that the defense investigator knew a month before the trial that they were going to clam up, and that therefore defense counsel should have been on notice as early as a month before trial that the prosecution couldn't prove their case without the confidential informant, and he should have gotten hopping on investigating her credibility. And when you have a snitch, there is so much to do to impeach the snitch, and he did none of that. He did sort of a shoot-from-the-hip, totally ineffectual cross-examination because this is what she does is give the police information. Was it clear before trial that Kimberling was going to be called at all? I would have thought the prosecutor wouldn't want to use her because her credibility is so bad, not use her out of desperation. The prosecutor said to the court that the reason she didn't reveal the identity of Kimberling before trial was because she wanted to keep her a secret because she was a confidential informant, implying that there was still some value in her confidentiality, and that is clearly what the prosecutor thought. The prosecutor thought that by granting use immunity or by granting immunity, she was going to get these three witnesses to testify. But what Mr. Evans has alleged in his state court petition and discussed in his federal petitions is that the defense investigator knew that they weren't going to testify, and so even though the prosecutor may not have known that, the defense counsel knew that, and instead of investigating her, he did nothing. He then argued when the issue came up in the state trial court, he basically, first he argued this is late discovery, exclude it, this is terrible, I haven't had a chance to do anything, I need to do all these things, and the judge said, you know, you make a good point, I'm letting it in, I'll give you four days. No, no, I don't need it, let's put her on the stand. I mean, it is stunning to me that a defense attorney said, no, no, let's not investigate, the only witness now who can place my client at the scene of the murder for which he is now serving 52 years to life. I see I'm way over my time. Thank you, counsel. Thank you. Good morning, Your Honors. May it please the Court, Deputy Attorney General Elizabeth Voorhees. Could you talk louder? I can't hear you. Oh, sure. Deputy Attorney General Elizabeth Voorhees on behalf of Responding Appellee. The State Trial Court, the Court of Appeal, the District Court, all reasonably and unequivocally rejected the claims that are before this Court. What happened in this case is not uncommon. During opening statement, the prosecutor, in good faith, outlined the testimony that she reasonably expected would be produced during trial, and it turned out that those witnesses refused to testify. Analogous to the situation in Fraser v. Copp, the jury was expressly instructed that the statements of counsel are not evidence, and the prosecutor did not tout the anticipated testimony as being a crucial part of its case. Most importantly, all relevant evidence which could have been presented to the jury by way of the testimony of Davis and Dickens and Britz was introduced through other means. And in the same vein, even absent the eyewitness identification, there's overwhelming circumstantial evidence that pointed to Evans' guilt. First of all, we have evidence which connected Evans to the white Honda. The Honda belonged to Dale McGarity, who loaned it to Evans' girlfriend, Leslie Dickens, who failed to return it by November 30th. The victim's girlfriend, Esmeralda Martinez, saw Evans driving that white Honda with Palacios sometime early in November, December. On December 5th, we have Dickens arrested while she was seated in the Honda, and Evans was later seen driving away in that Honda. On December 6th, Evans drove Palacios to Stephanie Bloom's house in the Honda and then waited in the car while Palacios went in the residence. On December 13th, which was three days before the murder, Evans drove the white Honda to Brian Howell's house to pick up some of Dickens' personal belongings. And finally, when the Honda was retrieved after the murder, it had been stripped and parts of the vehicle were found in Evans' car. We also have, in this case, overwhelming evidence which established Evans' motive for shooting Palacios. The prosecution's evidence showed that after Dickens was arrested on December 5th, she called Jacqueline Powell, said she was in jail under an alias, and needed to be bailed out before her deception was discovered. And by the way, all of these facts were summarized by the prosecutor as facts which would have been testified to by these witnesses. The only part that was not presented to the jury was what happened after the murder. So, on December 5th, we have the call to Jacqueline Powell saying, I need to get out of jail. On December 6th, we have when Evans drove Palacios to Bloom's house, Palacios said he needed to help Evans get money to bail Dickens out of jail. The following day, Bloom overheard Palacios in a- I'm afraid I've lost the thread. Why do I need to know the facts you're reminding us now in order to resolve the legal issue that's before us on this? Because the legal issue is whether the evidence that would have been- whether the evidence that would have been presented to the jury through Dickens' and Davis' and Britt's testimony was a crucial part of the prosecution's case. Oh, you're saying they had a good enough case without him? Absolutely. Absolutely. And it was mentioned by opposing counsel that there were many facts that were presented to the jury in the summary of the prosecutor's opening statement. Let's suppose for the sake of argument that they were crucial witnesses. What then? Is there a constitutional violation requiring that the petition be granted? Absolutely not. As in Frazier, we have the testimony in this case was presented not during trial while the witnesses were on the stand, but during opening statement when the anticipated testimony was just summarized. We have the jury being expressly and repeatedly instructed that it was not to construe counsel's statements as evidence. And the jury was also instructed that it was not to construe the witness' refusal to testify as in any way that would reflect negatively upon Evans. I thought that the prosecution's case was circumstantial to the point of being allowing for a lot of reasonable doubt without any witnesses. So I'm just not so sure that they're not crucial. But what you're saying is it doesn't matter. No, it doesn't matter. And the only thing that the testimony of Davis and Dickens and Brintz would have done was put a couple minor details into context. But it hardly seems like a couple of details. Yeah, he pulled out a gun and shot the guy. And they saw him do it. And they were there. There's just minor details. It doesn't seem like it would have been worth the prosecutor's time to tell the jury by name who was going to testify and what they were going to say. I mean, that did seem like a pretty substantial part of the prosecution's opening statement. I thought that the point was that there's no Supreme Court authority that suggests that this is so infirm that it's got to go back and that California's made a horrible mistake. Well, to the extent that the three witnesses, well, actually, Dickens, it's only Brintz and Davis who I witnessed the shooting. Your argument almost sounds like a harmless error argument rather than a no-error argument. There was no violation of the confrontation clause. So there are three people. There was no. There are three people that put the defendant there killing somebody. They don't testify. And what you've got is a bunch of stuff linking the defendant by two jumps to the car and giving him a motive because of his girlfriend, if she stayed in jail, bad stuff would come out. And we have Evans' statement that he was extremely pissed off that Palacio had taken the $300, that he was going to talk to him in a few days to get the money back. We have the testimony of Brintz's then-roommate who testified that a couple days after the murder, Evans came over to her apartment and was avoiding the police, et cetera, et cetera. I'm sorry? Lousy murder case without either a witness or a confession. You don't have scientific evidence tying a bullet in the victim to the defendant's gun or something like that. We have extremely strong circumstantial evidence starting with connecting him to the car, to the motive, to his own statements, to Stephanie Bloom, to Brian Howell, saying that he was going to go over and meet the victim, and if he was smart he was going to give him back his money. We have a couple days before the murder him seen with the gun. And then we have evidence of his deceptive post-arrest statements to police. But all of these arguments, counsel, are not arguments that there's no constitutional violation. These are arguments that if there was a constitutional violation, it wasn't harmful. No. These are no. My argument is that by making a mere reference to anticipated testimony made in good faith during opening statement, and coupled with instructions that the jury was not to construe counsel's statements as evidence, that precludes a finding of a violation of the Confrontation Clause. Right. And opposing counsel says that under Frazier v. Cuff, that that ruling by the California courts violates clearly established Supreme Court law. And to answer that there was lots of other evidence is not to answer that there was no constitutional violation, it's to say that if there was a violation, that it was harmless error. Well, I know. An error you may want to make, but it just seems to me that you might want to argue this case on the basis on which opposing counsel has argued it, which is that there's constitutional error. You might want to tell us why you think that there's no constitutional error. But it wouldn't be because there was lots of other evidence. Well, actually, it's my belief that counsel said that part of the, that in order to determine whether there's constitutional error, is to do a balancing test to determine the critical nature of the evidence. So we have to look at whether, because what Frazier says is if the statement is made, not while the witness is on the stand, but during opening statements, and we have the instructions, and the prosecution did not tout that evidence as a crucial part of its case, there is no Confrontation Clause violation, there is no significant infringement upon the defendant's constitutional right to a fair trial. What counsel is arguing is that whether or not the prosecution touted it, the very nature of that evidence was critical, because this was an identification case, and the two witnesses who didn't testify could have identified the defendant. So if we go at it from that angle, then we have to look at whether those witnesses really would have presented crucial evidence. Thank you, counsel. Thank you. If the court would give me permission for just one minute. Please, please go ahead. Thank you. Without the opening statement, Allen Davis is nowhere in this crime, nowhere in this crime scene. Without the opening statement, Allen Davis doesn't exist. The prosecutor ties him in in closing argument, and I'm not saying that that was so much touting, but it is all wrapped up. It's very hard in this case to separate out the facts that were put forth in opening statement from the way the case was argued. I am not going to suggest, certainly, that my client was not tied to Dale McGarrity's car by the evidence. However, when both the court and the prosecution keep talking about the car, they're talking about the white Honda, it maybe looked like a Civic and had a spoiler, but I can't identify it more than that, that Robert Montoya spoke about. So we don't actually have the car at the scene without the opening statement. It's the opening statement that gives us Dale McGarrity's car that's tied to Leslie Dickens that puts it at the scene of the crime with my client driving it. Because without the opening statement, we just have Robert Montoya saying he saw this white car, it sort of looked like it might have been a Honda Civic, and it had a spoiler. Look, the problem I'm really having with your case, we don't confer beforehand. I have no idea what my colleagues think. I didn't put any credence at all in the prosecutor's argument that it wasn't that important anyway. What concerns me is under 2254, we're just not allowed to tamper with a state conviction unless it's contrary to or an unreasonable application of a Supreme Court holding. And I look at Fraser v. Kuck, and the holding of the case seems to be that where the prosecutor did not know that the witness would refuse to testify and was not acting in bad faith, and the judge gave a limiting instruction, that in these circumstances, the limiting instructions given were sufficient to protect the petitioner's constitutional rights. That seems to be the holding. So it looks as though even if everything the appellee's attorney says is wrong and everything you say is right, you just don't have a holding. Fraser v. Kuck discusses two separate constitutional issues. And this issue about the prosecutor not knowing is with regard to the due process prosecutorial misconduct issue. It is not relevant to the Confrontation Clause analysis. And I think that the language can be very confusing, and I believe it has been misread by other courts, but the analysis for the purely Confrontation Clause analysis has nothing to do with what the prosecutor knew or didn't know. It has everything to do with the amount of evidence that was put forth to the jury in an opening or closing statement that could have been perceived of as evidence for the jury to consider.  Thank you. Evans v. Rowe is submitted.
judges: Canby, Kleinfeld, Bybee